ROHLMAN v HAWKEYE-SECURITY INSURANCE COMPANY
(ON REMAND)

Docket No. 167399. Submitted August 25, 1993, at Lansing. Decided
November 7, 1994, at 9:05 A.M.

Frederick R. Rohlman brought an action in the Oakland Circuit
Court against Hawkeye-Security Insurance Company and oth-
ers, seeking a declaration regarding his entitlement to benefits
under a no-fault automobile insurance policy issued by Hawk-
eye to Vicki Stevens. The plaintiff had been a passenger in
Stevens' minivan, which was registered in Michigan and being
driven in Ohio while pulling a two-wheeled trailer. The trailer
disconnected from the van and overturned, and the plaintiff
sustained injuries when, after getting out of the van and
walking ten to twenty feet back to the trailer, he attempted to
right the trailer and was struck by an unidentified vehicle.
Hawkeye moved for summary disposition, contending that the
plaintiff was not entitled to benefits because he was not occupy-
ing the van when he sustained his injuries. The court, David F.
Breck, J., denied the motion, ruling that under a broad con-
struction of the term "occupying" as used in the policy, the
plaintiff was occupying the van at the time of the accident. The
court subsequently granted summary disposition for the plain-
tiff and awarded personal injury protection and uninsured
motorist benefits. Hawkeye appealed. The Court of Appeals,
WAHLS and CYNAR, JJ., (REILLY, P.J., dissenting), affirmed,
holding that *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324
(1975), required that the term "occupying" be construed
broadly to include persons not actually inside or in contact
with a vehicle at the time of an accident if there was "immedi-
ate prior occupying of the vehicle" and the injury arose out of
the use or repair of the vehicle. 190 Mich App 540 (1991). The
Supreme Court, in an opinion by BRICKLEY, J., joined by BOYLE,
RILEY, GRIFFIN, and MALLETT, JJ. (LEVIN, J., joined by CAV-
ANAGH, C.J., dissenting), reversed and remanded to the Court of
Appeals, holding that the plaintiff was not an "occupant" of the
van at the time of the accident for purposes of awarding PIP
benefits, and directed the Court of Appeals to determine
whether the plaintiff was an occupant of the trailer for pur-
poses of PIP benefits and whether the plaintiff was occupying

either the van or the trailer for purposes of uninsured motorist benefits, as defined in the Hawkeye policy. 442 Mich 520 (1993).

On remand, the Court of Appeals *held:*

1. The Supreme Court, in its opinion in this case, has defined "occupant," for purposes of PIP benefits, as one who is physically inside a vehicle. Because the plaintiff was not physically inside the trailer at the time of the accident, he was not an occupant of the trailer insofar as PIP benefits are concerned. Summary disposition for Hawkeye with respect to PIP benefits is to be entered on remand.

2. The Hawkeye policy dictates the circumstances under which uninsured motorist coverage applies because the no-fault act does not require such coverage. That coverage protects a person occupying a covered automobile. Hawkeye has conceded that the trailer and the van are covered automobiles for purposes of uninsured motorist coverage, and the Hawkeye policy defines "occupying" as "in, upon, getting in, on, out or off." At the time of the accident, the plaintiff was not "getting in, on, out or off" the van or the trailer, and he is entitled to uninsured motorist benefits only if he was "upon" the van or the trailer. In order to have been upon the van or the trailer, the plaintiff would have had to have been in physical contact with the van or the trailer. It is clear that he was not in contact with the van, and Hawkeye is therefore not liable for uninsured motorist benefits as far as the van is concerned. However, it is not clear whether the plaintiff was in contact with the trailer, making it necessary to remand the case to the trial court for a determination of this factual question. The plaintiff would be entitled to uninsured motorist benefits if it is determined on remand that he was in contact with the trailer when it was struck by the unidentified vehicle.

Reversed and remanded.

WAHLS, P.J., concurring in part and dissenting in part, agreed that the plaintiff is not entitled to PIP benefits, but stated that physical contact with the van or the trailer should *not be required in order for the plaintiff to be eligible for* uninsured motorist benefits. A person who leaves a vehicle before the termination of a journey and is injured within a small perimeter of the vehicle while attempting to repair it or while engaging in vehicle-oriented conduct should be considered to be on, upon, or occupying the vehicle for purposes of uninsured motorist coverage.

*Beier Howlett* (by *Gerald G. White* and *Robert G. Waddell*), for Frederick R. Rohlman.

*Siemion, Huckabay, Bodary, Padilla, & Morganti, P.C.* (by *Thomas M. Caplis*), for Hawkeye-Security Insurance Company.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Schoolmaster & Taylor* (by *James H. Schoolmaster*) (*Gross & Nemeth* by *James G. Gross,* of Counsel), for Auto Club Insurance Association.

ON REMAND

Before: WAHLS, P.J., and REILLY and JANSEN, JJ.

REILLY, J. This matter is before this Court upon remand from the Michigan Supreme Court. Defendant Hawkeye-Security Insurance Company initially appealed from an order of the circuit court granting summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10). This Court affirmed the court's order by a two-to-one decision in *Rohlman v Hawkeye-Security Ins Co,* 190 Mich App 540; 476 NW2d 461 (1991) (Judge REILLY dissenting). The Supreme Court reversed this Court's decision and remanded the case to resolve additional issues not addressed in this Court's earlier opinion. 442 Mich 520; 502 NW2d 310 (1993). Having considered those issues, we reverse and remand for further proceedings.

For purposes of analyzing the issues, the alleged facts of this case are reiterated. On August 5, 1985, plaintiff was a passenger in a minivan owned by Vicki Stevens, registered in Michigan, and insured by Hawkeye. Stevens was driving the van through Ohio, pulling a small two-wheeled trailer, which was owned by her mother, Effie Stevens, and insured by third-party defendant Auto Club Insurance Association. As Stevens was driving, the trailer became unhitched, overturned, and came to

rest in the center lane of the highway. Stevens turned the van around and parked approximately ten to twenty feet behind the trailer. Plaintiff walked to the trailer and attempted to turn it over onto its wheels. Plaintiff alleged that, while he was lifting the trailer, he was struck by an unidentified vehicle that left the scene, and he sustained serious injuries.

Plaintiff filed an action against Hawkeye, seeking a declaratory judgment of his right to obtain personal injury protection (PIP) benefits and uninsured motorist benefits under the no-fault insurance policy issued to Vicki Stevens. Hawkeye subsequently moved for summary disposition on the basis that plaintiff was not entitled to no-fault benefits because he was not "occupying" either the van or the trailer at the time of the accident. The trial court denied the motion, relying primarily on the Michigan Supreme Court's holding in *Nickerson v Citizens Mutual Ins Co*, 393 Mich 324; 224 NW2d 896 (1975), and ruled that plaintiff was "occupying" the van at the time of the accident because: (1) if the trial court had not found plaintiff, an uninsured person, to be an occupant of the van, plaintiff would have had no recovery for his injuries;[1] and (2) public policy reasons support a purposely broad construction of the policy term "occupying" because "plaintiff alighted from the van to right a trailer which had been attached to it when he was injured."

This Court affirmed the trial court's ruling. In reversing our decision, the Supreme Court noted

[1] In Judge REILLY's dissent in the earlier opinion issued by this Court, she indicated that plaintiff's remedy was to seek coverage under the assigned claims provision, MCL 500.3172; MSA 24.13172. She hereby repudiates that statement. Section 3172 authorizes coverage only for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle in this state." Plaintiff was injured in an accident in Ohio and therefore was not entitled to the benefit of § 3172.

that the issue whether plaintiff was entitled to PIP benefits was to be determined under the statutory provisions of the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.,* specifically § 3111, MCL 500.3111; MSA 24.13111. In examining this section, the Court held that plaintiff was not entitled to PIP benefits in connection with the van because he was not an "occupant" of the van as that term is used in § 3111. The Supreme Court further remanded the case to this Court and directed us to consider:

1) For purposes of PIP benefits, whether Rohlman was an occupant of the trailer and, if so, whether the trailer was a covered vehicle;
2) For purposes of uninsured motorist benefits, whether Rohlman was occupying either the van or the trailer, as it is defined in the Hawkeye policy. [442 Mich 535.]

### I. PIP BENEFITS: THE TRAILER

As noted by the Supreme Court, § 3111 of the no-fault act determines whether a person who is injured in an accident outside the State of Michigan qualifies for PIP benefits:

Personal protection insurance benefits are payable for accidental bodily injury suffered in an accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident . . . *an occupant of a vehicle involved in the accident whose owner or registrant was insured under a personal protection insurance policy* or has provided security approved by the secretary of state under (4) of section 3101. [MCL 500.3111; MSA 24.13111. Emphasis added.]

Plaintiff must establish that he was (1) an occupant (2) of a vehicle involved in the accident. 442 Mich 527.

Because the term "occupant" is not defined by the no-fault act, this Court must construe the language of the statute by assigning to the term its primary and generally understood meaning consistent with the apparent intention of the Legislature in enacting the law. *Royal Globe Ins Cos v Frankenmuth Mutual Ins Co,* 419 Mich 565; 357 NW2d 652 (1984). In finding that plaintiff was not an "occupant" of the van, the Supreme Court in *Rohlman* stated:

> Although the no-fault act does not define the terms occupant or occupying, other sections of the act provide guidance in determining its meaning. Subsection 3106(1)(c) of the act states in part:
> "Accidental bodily injury does not arise out of ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless . . . the injury was sustained by a person while *occupying, entering into, or alighting from* the vehicle. [Emphasis added.]"
> The Legislature expressly recognized that "entering into" and "alighting from" are acts separate from "occupying" a vehicle. See *Royal Globe, supra* at 574, n 5. Section 3111 does not include "entering into" or "alighting from" the vehicle as acts that would trigger personal protection benefits for an out-of-state accident.
> By giving the term occupant its primary and generally understood meaning coupled with the above statutory reference, we conclude that the plaintiff was not an occupant of the van because he was not physically inside the van when the accident occurred. We find this interpretation consistent with our *Royal Globe* decision and the intent of the no-fault act. [442 Mich 531-532.]

In light of the definition applied by the Supreme

Court, we find that plaintiff was not an occupant of the trailer because he was not "physically inside" the trailer. Although plaintiff claims that his hands were on the trailer, he admits that he was standing beside it with both feet on the pavement and with no intention of entering it. The fact that he was allegedly in actual contact with the trailer is not sufficient to transform him into an occupant in light of the Supreme Court's analysis distinguishing the act of being an occupant from the acts of entering into and alighting from a vehicle. Therefore, plaintiff is not entitled to PIP benefits in connection with the trailer under § 3111.[2] Accordingly, we remand to the trial court for entry of an order granting Hawkeye's motion for summary disposition pertaining to PIP benefits.

## II. UNINSURED MOTORIST BENEFITS

The issue whether plaintiff is entitled to uninsured motorist benefits is controlled by Stevens' insurance policy with Hawkeye. The policy dictates the circumstances under which uninsured motorist benefits will be awarded because the no-fault act does not require an insured to provide these benefits. 442 Mich 525. See also *Kreager v State Farm Mutual Automobile Ins Co,* 197 Mich App 577, 581-582; 496 NW2d 346 (1992). Consequently, our duty is to determine, from the policy language used, the apparent intention of the contracting parties. Doubtful or ambiguous terms must be construed in favor of the insured and against the insurer, the drafter of the contract. *Royal Globe, supra* at 573.

---

[2] Having reached this conclusion, we need not address the issue whether the trailer is a motor vehicle under the no-fault act. However, we note that a "motor vehicle" as defined in § 3101(2)(e), MCL 500.3101(2)(e); MSA 24.13101(2)(e), includes trailers, but requires that the vehicle have more than two wheels.

Under the uninsured motorist provision of the insurance policy issued by Hawkeye, an injured person is entitled to uninsured motorist benefits if the injury occurred by accident and was sustained by a "covered person." A covered person is the insured, a family member of the insured, or any other person "occupying" the "covered auto." Hawkeye has conceded that the trailer, as well as the van, was a covered auto for purposes of uninsured motorist coverage. The term "occupying" is defined in the policy as "in, upon, getting in, on, out or off."

As noted above, it is clear from plaintiff's allegations that he was not "in" the van or the trailer at the time of the accident. The question remains whether plaintiff was "upon, getting in, on, out or off" either of the vehicles. Because the parties could not realistically have intended that any stranger who is injured in an accident involving the covered vehicle and an uninsured motorist would be occupying the covered auto if it could only be shown that the stranger was somewhere "off" the vehicle, or "out" of the vehicle, we conclude that the words "out or off" must be read in connection with the preceding word "getting." If the injured person were "getting out or off" the covered auto, then the person would be considered to be "occupying" it. Similarly, we conclude that the word "on," following "getting in" and preceding "out or off," must also be considered together with the word "getting" in order to distinguish it from the word "upon," commonly used as the equivalent of "on." *The Random House College Dictionary, Revised Edition* (1988). Even accepting plaintiff's alleged facts as true, it is apparent that plaintiff was not "getting in, on, out or off" the van or the trailer when the accident occurred. Consequently, plaintiff would be entitled to unin-

sured motorist benefits only if he could show that
he was "upon" the van or the trailer at the time of
the accident.

In *Nickerson, supra,* relied upon by the trial
court, the plaintiff sued under a contract of insur-
ance issued before the adoption of the no-fault act.
Pursuant to that insurance contract, the plaintiff
would only be an "assured" covered for injuries
caused by an uninsured motorist if the plaintiff
was "occupying the insured automobile." In *Nick-
erson,* the term "occupying" was explicitly defined
in the insurance policy as "in or upon or entering
into or alighting from." Our Supreme Court ruled
that the policy term "occupying" should be con-
strued in a broad manner so as to include those
persons not actually inside or even in contact with
the vehicle at the time of the accident if there was
"immediate prior 'occupying' of the insured vehi-
cle" and the subsequent injury arose "out of the
use or repair of the same vehicle." *Nickerson,
supra* at 328-332.[3]

Subsequently, in *Royal Globe, supra,* the mean-
ing of "occupant" was considered in the context of
the no-fault act. The Court acknowledged that its
interpretation of the contract language in *Nicker-
son* was calculated to avoid a dilemma that had
been vitiated with the adoption of the no-fault act.
If the Court had not broadly interpreted the insur-
ance contract to determine that Nickerson was
"occupying" the vehicle, Nickerson would have
had no recovery for his injuries under the policy
because the vehicle that caused the injuries was
uninsured. Therefore, as a matter of public policy,
a broad, obviously strained construction was

_____

[3] We note that plaintiff would not be entitled to benefits if we were
to apply the *Nickerson* test because, even if we were to conclude that
plaintiff was occupying the van immediately before the accident, the
injury did not arise out of the use or repair of the van.

adopted for the purpose of finding coverage. *Royal Globe, supra* at 574; *Nickerson, supra* at 331. In its earlier decision in this case, the majority followed the reasoning of *Nickerson,* found that plaintiff was "occupying" the van, and affirmed the decision of the trial court.

In reversing and remanding this case, the Supreme Court noted that this Court, when following *Nickerson,* failed to acknowledge the significance of the adoption of the no-fault act, and overlooked the fact that, under that law, essentially all accidents are now covered by personal injury protection benefits or the assigned claims plan. According to the Supreme Court, the repeal of the uninsured motorist statute and the passage of the no-fault act largely eliminated the motivating factors underlying the *Nickerson* decision. 442 Mich 529. The Supreme Court noted:

> In this case it is true that the plaintiff is also without insurance of his own; however, the result is unique and would only apply in very isolated instances. The plaintiff was out of state when the accident occurred. If the accident occurred in-state he would have been covered by the assigned claims plan of the no-fault act. MCL 500.3172(1); MSA 24.13172(1). Also, the case takes on added importance because, while the factual situation is fairly unique and isolated, the Court of Appeals interpretation of occupant would extend to other provisions of the no-fault act. Affording solicitude to an insured in a private-party contract setting is far different from interpreting a statutory provision that would have ramifications throughout the no-fault act. [442 Mich 529, n 9.]

While we acknowledge that the interpretation of a private-party contract may not have the ramifications of the interpretation of a statute, we recognize that the policy definition of "occupying," i.e.,

"in, upon, getting in, on, out or off" is relatively common in the automobile insurance industry. Our interpretation of these words in this policy will have consequences far beyond the interpretation of this private-party contract and the situation presented here. With that in mind, we proceed with the task.

Since the enactment of the no-fault act, panels of this Court have questioned the soundness of utilizing *Nickerson* as authority for construction of the term "occupying" when used to define coverage not mandated by the no-fault act. In *Lankford v Citizens Ins Co,* 171 Mich App 413; 431 NW2d 59 (1988), the plaintiff had gotten out of his rental car and pushed it to the curb to assess the damage following a collision. While he was bending over the front of the vehicle, with his right knee touching the front bumper and his right hand on top of the car's hood, another automobile, driven by an uninsured motorist, struck the rental vehicle from behind and caused injuries to the plaintiff. This Court, relying on the rejection of the *Nickerson* rationale in *Royal Globe, supra,* and *Hackley v State Farm Mutual Automobile Ins Co,* 147 Mich App 115; 383 NW2d 108 (1985), which interpreted the term "occupant" in the no-fault act, determined that *Nickerson* was no longer controlling. The Court rejected the "immediate prior occupancy" test of *Nickerson* and held that Aetna Casualty and Surety Company, the insurer of the rental car, was not responsible to the plaintiff for uninsured motorist coverage because the plaintiff was not "occupying" the rental car when it was struck by the uninsured motorist. See also *Auto-Owners Ins Co v Turner,* 135 Mich App 522; 354 NW2d 813 (1984), and the discussion in *Hackley, supra.*

Now that the Supreme Court has likewise indi-

cated that the public policy rationale of *Nickerson* is not controlling when interpreting the word "occupant" under the no-fault act, and has noted that plaintiff's situation is "fairly unique and isolated," we conclude that we should not be bound by the *Nickerson* rationale when interpreting an insurance contract providing uninsured motorist benefits, supplemental coverage not required by the no-fault act. The need for a public policy demanding a broad, strained interpretation of language in an insurance policy in order to protect a significant segment of the population no longer exists. The fact that a person may not be covered by insurance on a rare occasion, such as exists in this case, is not reason to give policy language an interpretation that is inconsistent with dictionary definitions, common understanding, or the intent of the parties. We hold, therefore, that the policy term "occupying" should be given a literal construction consistent with the generally understood meaning of the terms used in its definition. We must determine, from the language used, the apparent intention of the contracting parties, and construe doubtful or ambiguous terms favorably to the insured and against the insurer. 442 Mich 528-529.

The word "upon" is defined in *The Random House College Dictionary, Revised Edition* (1988) as:

> 1. up and on; upward so as to get or be on: *He climbed upon his horse and rode off.*
> 2. in an elevated position on.
> 3. in or into complete or approximate contact with, as an attacker or an important or pressing occasion: *The enemy was upon us. The Christmas holiday will soon be upon us.*
> 4. on the occasion of, at the time of, or immediately after. . . .
> 5. on (in any of various senses, used as an

equivalent of *on* with no added idea of ascent or elevation, and preferred in certain cases only for euphonic or metrical reasons).

The word is similarly defined in *Webster's Third New International Dictionary.* The relevant definitions are:

1: on
2: a) upward so as to be on (jumped upon the horse); b) in a high position on (built a house upon the hill);
3: having a powerful influence on; lying heavily on (the enchantment of the beautiful scenery was still upon me; the hush upon the dinner table);

* * *

6: a)(1) in or into close proximity or contact with by way of or as if by way of attack (the enemy is upon us; despondency fell upon me; summer holidays are upon us); (2) into sudden esp. unexpected contact with (came upon the letter in an old desk; hits upon a solution).

Both definitions use the word "upon" interchangeably with "on." The word "on" has nineteen separate definitions in *The Random House Dictionary,* the most relevant being:

6. (used to indicate place, location, situation, etc.): *a scar on the face.*
7. (used to indicate immediate proximity): *a house on the lake.*

We doubt that anyone would argue that the parties to the insurance contract intended that the word "upon" be used in the sense of "approximate contact . . . with an attacker" or "in close proximity . . . with an attack." Moreover, we are convinced that the parties did not intend that "upon" should be interpreted as "immediate proximity."

That interpretation would provide (and require payment for) supplemental coverage in the form of uninsured motorist benefits for anyone who happens to be near the covered auto and injured when the auto is struck by an uninsured motorist even though the person has no connection with the owner, named insured, or covered vehicle.

However, we are not persuaded that the term "on" or "upon" requires that an object or person be positioned so that the object or person is totally and completely in contact with or supported by the underlying object or person. For example, we might say that the child was "on" his scooter, understanding that one foot was on the scooter while the other foot was pushing on the ground, or that a secretary is working "on" a computer, or is "on" the telephone, although the secretary's body is not totally in contact with either instrument. We conclude, then, that the term "upon" in the definition of "occupying" means, at a minimum, some physical contact with the covered auto. A person seeking uninsured motorist benefits by claiming to be "upon" a covered auto must show that there was physical contact between the person and the covered auto when the injury occurred. *Auto-Owners Ins Co, supra.*

According to plaintiff's own statements, he was not in physical contact with the van, and the van was not involved, when the accident occurred. Consequently, Hawkeye is not liable for uninsured motorist benefits in connection with the van. However, a question of fact remains regarding whether plaintiff was in physical contact with the trailer at the time of the accident. We are mindful that the record is inconsistent with respect to exactly where plaintiff was when the accident occurred. As noted by the Supreme Court in *Rohlman,* 442 Mich 533, n 12:

The medical records state: "This is a twenty-eight year old white male was [sic] brought in by rescue squad. The patient states that he was walking when a car crossed the mid-line. The patient tried to jump out of the way but was hit in the left leg." The plaintiff also told his treating physician that "he was a pedestrian struck by a car."

Because of this factual discrepancy, summary disposition of the issue of uninsured motorist coverage in connection with the trailer would be inappropriate. Therefore, we remand to the trial court for resolution of this factual issue.

The trial court's order granting summary disposition in favor of plaintiff is reversed. The trial court is directed to enter an order granting summary disposition in favor of Hawkeye regarding PIP benefits (van and trailer), and uninsured motorist benefits in relation to the van. The case is remanded to resolve the factual issue regarding physical contact with the trailer. If it is determined that plaintiff was in physical contact with the trailer when it was struck by the uninsured motorist, plaintiff is entitled to uninsured motorist benefits. If there was no physical contact with the trailer when the accident occurred, Hawkeye is entitled to judgment in its favor.

Reversed and remanded.

Jansen, J., concurred.

Wahls, P.J. *(concurring in part and dissenting in part).* I concur with the result reached by the majority in Part I. However, I respectfully dissent from the conclusion reached in Part II.

The question whether plaintiff can recover under the uninsured motorist provision depends on whether he was "occupying" the minivan or the trailer within the meaning of the insurance policy

issued by Hawkeye. If a provision in an insurance contract is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense. *Clevenger v Allstate Ins Co,* 443 Mich 646, 654; 505 NW2d 553 (1993). A provision is ambiguous when its words may reasonably be understood in different ways. *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982); *Michigan Mutual Ins Co v Dowell,* 204 Mich App 81, 87; 514 NW2d 185 (1994). If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances, the contract is ambiguous and should be construed against the drafter in favor of coverage. *Raska, supra.*

Because resolution involves construction of the insurance policy rather than a statutory provision, I believe that an analysis under *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324, 328-331; 224 NW2d 896 (1975), requires affirmance of the award of uninsured motorist benefits. In *Nickerson,* the policy defined the term "occupying" as "in or upon or entering into or alighting from." In construing the term against the insurer, the Supreme Court rejected the restrictive interpretation that physical contact was mandatory. Instead, the Court held that the plaintiff was "occupying" the vehicle at the time of the accident because he had been immediately occupying the vehicle and suffered an injury arising out of the use or repair of the vehicle. *Id.* at 326, 330-331.

The subsequent case from the Supreme Court, *Royal Globe Ins Cos v Frankenmuth Mutual Ins Co,* 419 Mich 565; 357 NW2d 652 (1984), solely involved the statutory interpretation of the term

"occupant" as used in the no-fault act. The Court in *Royal Globe* noted other reasons beside public policy for distinguishing *Nickerson:* (1) that *Nickerson* construed the terms of a private insurance contract rather than the language of a statute, therefore involving different rules of construction; and (2) the term "occupying" was expressly defined in the policy as meaning "in or upon or entering into or alighting from," whereas the term "occupant" was not defined by statute. *Royal Globe, supra* at 573-574. I believe that until the Supreme Court has expressly overruled *Nickerson* in a context involving the similar facts, the Supreme Court's analysis remains binding.[1]

Furthermore, numerous cases in other jurisdictions have considered the meaning of the words "on" or "upon" within the context of similar uninsured motorist provisions and have rejected a restrictive interpretation that physical contact is required. Generally, the courts have construed the term "on" or "upon" to include a person who leaves a vehicle before the termination of the journey and is injured within a small geographic perimeter of the vehicle while servicing the vehicle or engaging in other vehicle-oriented conduct. Thus, an injured person may recover under an uninsured motorist provision if the person can establish a relationship with the insured car at the time of the accident, despite the lack of physical contact with the insured vehicle at the time.

---

[1] Previous decisions from this Court involving interpretation of the term "occupant" under a statutory provision of the no-fault act likewise utilized the statutory rules of construction rather than the rules of construction for a private insurance contract. *Lankford v Citizens Ins Co of America,* 171 Mich App 413; 431 NW2d 59 (1988); *Hackley v State Farm Mutual Automobile Ins Co,* 147 Mich App 115; 383 NW2d 108 (1985); *Auto-Owners Ins Co v Turner,* 135 Mich App 522; 354 NW2d 813 (1984). Unlike the majority, I do not find these decisions an appropriate source for interpreting the term "occupying" as defined under the insurance contract.

In *Tata v Nichols,* 848 SW2d 649 (Tenn, 1993), a vehicle insured by Allstate Insurance Company became disabled while traveling on a highway and was parked on the shoulder. The plaintiff, who was a passenger in a vehicle insured by Maryland Casualty Company, stopped to assist. As the plaintiff leaned under the open hood of the disabled vehicle while attaching a set of battery cables, an uninsured motorist collided with the rear of the disabled vehicle and crushed the plaintiff between the two vehicles. The plaintiff claimed coverage under the uninsured motorist provisions of the policies covering the vehicles. Each policy provided uninsured motorist coverage for "anyone else occupying a covered auto." The Maryland policy defined "occupying" as "in, upon, getting in, on, out or off" the covered vehicle. The Allstate policy defined "occupying" as "in or upon or entering into or alighting from" a covered vehicle.

The Tennessee Supreme Court noted that a majority of jurisdictions looked at factors such as the proximity between the claimant and the insured car in time, distance, and geography, as well as the intent of the claimant, in interpreting the term "occupying" as defined in insurance policies. *Id.* at 651. After reviewing decisions from other states and dictionary definitions, the Tennessee Supreme Court concluded that the term "upon" had no precise meaning except in the context of the particular facts in each case. *Id.* at 651-653. The court proceeded to reverse the trial court's dismissal:

> When tested according to these authorities, the facts in this case show that the plaintiff's relationship with each vehicle was within the meaning of "upon." The plaintiff had not severed his relationship with the Glidewell Jeep which was being used

to "jump start" the Horton vehicle. He was in very
close geographic and spatial proximity to both
vehicles, indeed under the hood of the Horton car,
and he was directly engaged in activities involving
both vehicles. These factual circumstances consti-
tute the location or position described by "upon,"
and the plaintiff's relationship with each vehicle is
within the policy definition of "occupying." [*Id.* at
653.]

See also *State Farm Mutual Automobile Ins Co v
Cookinham,* 135 NH 247; 604 A2d 563 (1992);
*Kentucky Farm Bureau Mutual Ins Co v Gray,* 831
SW2d 164 (Ky, 1992) *Kreuser v Heritage Mutual
Ins Co,* 158 Wis 2d 166; 461 NW2d 806 (1990);
*Mondelli v State Farm Mutual Automobile Ins Co,*
102 NJ 167; 506 A2d 728 (1986); *State Farm Mu-
tual Automobile Ins Co v Holmes,* 175 Ga App 655;
333 SE2d 917 (1985); *Utica Mutual Ins Co v Con-
trisciane,* 504 Pa 328; 473 A2d 1005 (1984); *Sayers
v Safeco Ins Co,* 192 Mont 336; 628 P2d 659 (1981);
*Manning v Summit Home Ins Co,* 128 Ariz 79; 623
P2d 1235 (1980).

Under the majority's analysis, whether an in-
jured person is covered under an insurance policy
rests upon the fortuitous event that the person
steps away from an automobile momentarily and
is hit by an uninsured motorist. Of course, in most
situations, the injured person is covered by the
assigned claims plan of the no-fault act, MCL
500.3172(1); MSA 24.13172(1). Given the insurance
company's failure to require physical contact in
defining "occupying," I am not willing to pass such
costs along.

Rather than adopting a bright-line test that
requires physical contact, I would hold that the
determination whether the definition of "occupy-
ing" contained in the insurance policy issued by
Hawkeye is satisfied should be decided case by

case. In this case, plaintiff had gotten out of the van because of a vehicle-oriented incident during their travel. Remaining in close proximity to the van, he engaged in activities involving both the van and the trailer by attempting to turn the trailer in order to reattach it to the van. Plaintiff was injured within two minutes of departing from the van. Had he been able to reattach the trailer, plaintiff and his party would have continued their travel to this state. Because plaintiff remained in close proximity and was attempting to alleviate a vehicle-oriented incident in order to continue their travel, I would hold that plaintiff was occupying the van and the trailer at the time of the accident. Therefore, plaintiff was a covered person under the policy for purposes of uninsured motorist benefits. Accordingly, I would affirm the trial court's order pertaining to the uninsured motorist provision.