*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOLLY SWITALSKI, Personal Representative of
the ESTATE OF EDWARD SWITALSKI,

UNPUBLISHED
August 17, 2023

Plaintiff-Appellee,

v

No. 360391
Kalamazoo Circuit Court
LC No. 2017-000522-NI

BRANDON W. CLEVENGER,

Defendant-Appellee,

and

EMPLOYERS MUTUAL CASUALTY COMPANY
and HAMILTON MUTUAL INSURANCE
COMPANY,

Defendants-Appellants,

and

FARMERS INSURANCE EXCHANGE,

Defendant.

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

At issue in this case is whether plaintiff's decedent, Edward Switalski, was "occupying" Comstock Township Fire Department's Vehicle 990—a Ford Expedition—when defendant Brandon W. Clevenger lost control of his car, crashed into the Expedition, and killed then Fire Chief Switalski. At the time of the accident, the Expedition was covered under an insurance policy issued by defendant Hamilton Mutual Insurance Company that included $1,000,000 in

underinsured motorist (UIM) coverage.[1]  The Expedition was also covered by a commercial umbrella policy issued by defendant Employers Mutual Casualty Company with $1,000,000 in excess coverage.  The insurers argued that the UIM coverage was not applicable because Switalski was not occupying the Expedition when he was struck.  A jury unanimously concluded that Chief Switalski was occupying the Expedition when he was struck and killed.  The jury also found that the Estate of Edward Switalski suffered $942,926 in economic damages and an equal amount in noneconomic damages.

Hamilton and Employers argue that there was insufficient evidence to establish that Switalski was occupying the Expedition at the time of the accident and thus the trial court erred when it denied their motions for summary disposition and directed verdict.  Employers also argues that it was entitled to summary disposition because the umbrella policy did not include excess coverage for UIM benefits.  We find that there was evidence from which a reasonable juror could find that Chief Switalski was in the process of getting into the Expedition when he was struck and killed.  We further conclude that the umbrella policy provides excess coverage for all coverages included in the underlying auto policy, including UIM coverage.  We affirm.

## I.  BACKGROUND

On June 14, 2017, at about 9:30 p.m., firefighters from the Comstock Township Fire Department responded to a call about a vehicle that had left the expressway on eastbound I-94.  Chief Switalski responded to the scene in the Expedition assigned to him with his lights activated.  Chief Switalski was seen going to the back of his Expedition where he opened the rear hatch and donned his firefighting gear consisting of a helmet, boots, pants, jacket, and safety vest.  After confirming that the scene was clear and that the scene could be turned over to the Sheriff's Department, Chief Switalski told the deputy chief that he was "in the clear."  The Chief walked back to his Expedition to leave.

At some point after Chief Switalski's conversation with the deputy chief, Clevenger approached the scene.  Clevenger was driving his Mercury vehicle at about 90 miles an hour in the passing lane.  He tried to pass a slow-moving vehicle on the left, but the shoulder was not wide enough, and he struck a concrete barrier.  Clevenger lost control of his car, which began to swerve.  Clevenger's car spun all the way around to face the opposite direction that he had been driving.  His car struck the rear panel of the Chief's Expedition at about 64 miles an hour.  The Expedition began to spin counterclockwise, and Clevenger's car also continued to rotate.  The two vehicles again collided at the rear of the Expedition.  Chief Switalski was briefly pinned, and his left leg was bent under the Expedition with such force that it was nearly severed—only a piece of skin connected his lower leg to the remainder of his body.  The force of the crash caused the two vehicles to separate, and the Chief was thrown 30 feet down an embankment.  Despite heroic efforts to revive him, Chief Switalski died at the scene.  There was evidence that the Chief was behind the Expedition with the hatch open and was removing his gear at the time that he was injured.

---

[1] Clevenger only had $20,000 in liability coverage.

Holly Switalski, as the personal representative of her late husband's estate, initiated this action on behalf of the Estate against Clevenger, Hamilton, and Employers. The Estate brought a claim against Clevenger for damages arising from the Chief's wrongful death and claims against Hamilton and Employers for UIM benefits. The Estate later amended its complaint to include Farmers, which was the insurer of Chief Switalski's privately owned vehicle.[2]

Following discovery, Hamilton and Employers moved for summary disposition under MCR 2.116(C)(10). Hamilton conceded that its business automobile insurance policy applied generally to the Expedition and to persons, such as the Chief, who were properly using the Expedition. But Hamilton maintained that there was no UIM coverage because there was no evidence the Chief was occupying the Expedition at the time of the accident. Hamilton stated that the term "occupying" was defined in the policy to mean "in, upon, getting in, on, out or off." And because the Estate was not entitled to UIM benefits, the insurers argued that excess coverage was not triggered under Employers' umbrella policy. The Estate argued that there was evidence from which a reasonable jury could conclude that Chief Switalski was occupying the Expedition at the time of impact. The trial court concluded that there was a genuine dispute whether the Chief was in, upon, getting in, on, out, or off the Expedition and denied the motion. The insurers moved for reconsideration, which the trial court denied.[3]

Thereafter, Employers moved for summary disposition arguing that its umbrella policy did not cover the losses at issue. Specifically, it asserted that the umbrella policy's excess coverage applied only to underlying insurance policies that were listed on the declarations page of the umbrella policy. Because the UIM coverage issued by Hamilton was not listed on the declarations page with its limit, Employers maintained there was no umbrella coverage. It also argued that the umbrella policy excluded coverage for losses payable under uninsured or underinsured motorist law. In response, the Estate asserted that the underlying policy issued by Hamilton included an endorsement for UIM coverage and the overall policy was listed on the declarations page of the umbrella policy. The Estate also maintained that the exclusion did not apply because Michigan law did not require UIM benefits. The trial court denied Employers' motion, concluding that the umbrella policy included "all of the commitments set forth by the [Hamilton] policy by virtue of its statement on the declarations page and that that would include such coverage as exists for uninsured or underinsured motorist loss."

Following a 5-day jury trial, the jury unanimously concluded that Chief Switalski was occupying the Expedition when he was struck and killed. The jury also found that the Estate suffered $942,926 in economic damages and an equal amount in noneconomic damages. After

---

[2] Farmers settled with the Estate and is not a party to this appeal.

[3] Hamilton and Employers applied for leave to appeal in this Court, which a majority of this Court denied. *Estate of Switalski v Clevenger*, unpublished order of the Court of Appeals, entered September 13, 2019 (Docket No. 348793). Our Supreme Court also denied leave. *Switalski v Clevenger*, 505 Mich 1022 (2020).

additions for costs and interest, the trial court entered a judgment in favor of the Estate against Hamilton and Employers for $2,976,989.58. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo a trial court's decision on a motion for a directed verdict. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009). And we review de novo the proper interpretation of an insurance agreement. *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 243; 661 NW2d 562 (2003). We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). A trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes. *Id*.

## III. "OCCUPYING"

Hamilton and Employers argue that the trial court erred when it denied their motions for summary disposition, reconsideration, and directed verdict because there was insufficient evidence to establish that Switalski was occupying the Expedition at the time of the accident. We disagree.

## A. SUMMARY DISPOSITION

When reviewing a motion for summary disposition under MCR 2.116(C)(10), a trial court must consider the evidence submitted by the parties in the light most favorable to the non-moving party and may only grant the motion if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). But "[t]he court is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Hamilton and Employers argue that the Estate was not entitled to UIM benefits because the undisputed evidence showed that Chief Switalski was not occupying the insured Expedition at the time of his injury. The Legislature did not mandate the purchase of UIM benefits under the provisions for no-fault insurance; for that reason, insurers may—but are not required to—offer the additional coverage and may offer it in whatever form the insurer wishes to risk. *Nickola v MIC Gen Ins Co*, 500 Mich 115, 122; 894 NW2d 552 (2017). Because UIM coverage is optional, the rights and limitations applicable to UIM coverage are governed by the terms of the insurance contract. *Anderson v Progressive Marathon Ins Co*, 322 Mich App 76, 84-85; 910 NW2d 691 (2017). When construing a contact, this Court gives the "words used in the contract their plain and ordinary meaning," which would be "apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). An unambiguous contract must be enforced as written. *Id*. at 468.

Hamilton and Employers argue that the UIM endorsement only applied to an insured who was "occupying" the Expedition when the insured suffered injuries. The contract defines

-4-

"occupying" to mean "in, upon, getting in, on, out or off." The insurers maintain that the evidence showed that the Chief was, at most, in contact with the Expedition when he was injured, which did not establish that he was in, upon, or getting in, on, out, or off it. The Estate argued that the evidence supported the conclusion that the Chief was either "upon" the Expedition or in the process of "getting in" the Expedition when he was injured.

Hamilton's policy defines "occupying" with simple and direct language. The first two terms—"in" and "upon"—are prepositions. In ordinary speech, the preposition "upon" is interchangeable with the preposition "on." See *Rohlman v Hawkeye-Security Ins Co (On Remand)*, 207 Mich App 344, 351; 526 NW2d 183 (1994), rejected not in relevant part by *Rednour*, 468 Mich 241 (2003). And the context makes clear that the present participle "getting" modifies each of the subsequent prepositions (in, on, out, or off) to form participial phrases. The participial phrases—such as "getting in"—refer to a process or sequence of actions that will result in the person being in, on, out, or off the vehicle. *Rohlman*, 207 Mich App at 351 (analyzing an identical definition of "occupying" and concluding that the term "getting" modifies each of the following prepositions). The definition incorporates two states: the state of being in the vehicle and the state of being upon the vehicle; it also incorporates four processes: the process of getting in the vehicle, the process of getting on the vehicle, the process of getting out of the vehicle, and the process of getting off the vehicle. The language is susceptible to ordinary understanding and is not ambiguous on its face.

We conclude that there was a genuine issue of material fact whether the Chief was "getting in" the Expedition when he was struck and killed. Although there are no Michigan authorities establishing a test for determining what constitutes "getting in" in the context of this definition of "occupying" a vehicle, this Court has discussed the meaning of the no-fault provision allowing coverage for persons "entering into" a covered vehicle as provided under MCL 500.3106(1)(c).[4] As our Supreme Court has recognized, the phrases "entering into" and "alighting"—as used in the no-fault law—have narrow meanings, which must be respected. *Frazier v Allstate Ins Co*, 490 Mich 381, 385 n 1; 808 NW2d 450 (2011). The phrase "getting in," by contrast, is broader.

In *Ansara v State Farm Ins Co*, 207 Mich App 320, 321-322; 523 NW2d 899 (1994), this Court held that the plaintiff was in the process of entering his car when he was walking to the driver's side of the car. The evidence showed that the plaintiff went to his car, opened the driver's

---

[4] This Court has recognized that "entering into" a vehicle constitutes a process that begins before a person's body crosses the threshold of the vehicle—that is, before a person begins to physically place his or her body into the car. We have distinguished between a person walking to the vehicle and interacting with the vehicle in some way to initiate the process of entering. See, e.g., *Graves v Collier*, 335 Mich App 14, 23; 966 NW2d 229 (2020) (stating that the injured person must ordinarily have initiated the entering process by touching the door); *Hunt v Citizens Ins Co*, 183 Mich App 660, 664; 455 NW2d 384 (1990) (holding that a person who has his keys in hand and is touching the door has begun the process of entering into the car); *McCaslin v The Hartford Accident & Indemnity*, 182 Mich App 419, 422; 452 NW2d 834 (1990) (holding that a plaintiff who was struck while walking back to his car after paying for gas was not "entering into" his vehicle because he had not yet made contact with the door).

-5-

door, sat down, started the car, and turned on the air conditioning. He got out again and walked to the passenger's side of the car. He then helped his wife secure their grandson in the car and walked back to the driver's side. On the walk back to the driver's side, the plaintiff broke his ankle. *Id.* at 321. On these facts, this Court determined that the plaintiff was in the process of entering the car when he suffered his injury because he had interacted with the car as part of the process to enter it. *Id.* at 321-322.

The facts adduced on summary disposition in this case are akin to those that this Court determined amounted to "entering into" a vehicle in *Ansara*. There was evidence that Chief Switalski had completed his tasks at the scene and told his deputy chief that he was leaving. The deputy chief observed the Chief walk back to the Expedition, which had been specifically assigned to the Chief as his command vehicle. There was expert testimony that, based on the physical evidence, the Chief was facing forward at the rear of the Expedition with the hatch open when he was struck and injured. There was also evidence from which a jury could infer that the Chief opened the hatch and was removing and stowing his firefighter's gear in the Expedition when he was struck. The jury could find that removing and stowing his gear was an essential step that reasonably had to be performed before the Chief could move to the driver's side door and physically place himself inside the Expedition. Indeed, Chief Switalski's successor, Chief Matthew Beauchamp, testified at his deposition that Chief Switalski never wore his helmet when driving. The evidence that the Chief had made physical contact with the vehicle—as opposed to being in the process of walking to it—and was taking steps to stow his gear is similar to the facts of *Ansara.* In both cases the injured parties interacted with the vehicle in ways that were preliminary to, and reasonably necessary before, physically positioning themselves in the vehicle. See *Ansara*, 207 Mich App at 321-322. Because there was evidence that the Chief had physically interacted with the Expedition and begun the process of "getting in" it when he was struck, we conclude that there was a factual dispute as to whether he was "occupying" the Expedition and thus entitled to UIM benefits under the policy issued by Hamilton. Accordingly, the trial court did not err by denying the insurers' motion for summary disposition.[5] And because the trial court did not err when it denied the insurers' motion for summary disposition, it did not abuse its discretion when it denied the insurers' motion for reconsideration. See *Farm Bureau Ins Co*, 328 Mich App at 672.

## B. DIRECTED VERDICT

For similar reasons, we conclude that the trial court did not err by denying the insurers' motion for a directed verdict. A motion for a directed verdict is a challenge to the sufficiency of the evidence presented by the opposing party. See *Taylor*, 286 Mich App at 499. We review a challenge to the sufficiency of the evidence by reviewing all the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if a review of the evidence in that light fails to establish the claim as a matter of law. *Id.* "If

---

[5] Although the trial court did not premise its decision to deny the motion for summary disposition based on the facts that supported an inference that the Chief was "getting in" the Expedition, it nevertheless reached the correct result. See *Varela v Spanski*, 329 Mich App 58, 81; 941 NW2d 60 (2019).

reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Id*. at 500.

At trial, the Estate presented evidence that Chief Switalski had walked to the Expedition and begun interacting with the storage space in the back as a prerequisite to leaving. Specifically, there was evidence that he placed his firefighter's helmet in the back, may have placed other gear in the back, and had begun to remove a boot, presumably to stow it in back, when he was struck. The evidence presented at trial was sufficient to allow a reasonable jury to determine that Chief Switalski was in the process of "getting in" the Expedition when he was struck and killed. Accordingly, the trial court did not err when it denied the motion for a directed verdict. See *id*. at 499-500.

## IV. EXCESS COVERAGE

Employers argues that it was entitled to summary disposition because the umbrella policy did not include excess coverage for UIM benefits. We disagree.

"Umbrella policies provide unique coverage, often called catastrophe coverage." *Bosco v Burmeister*, 456 Mich 279, 294; 571 NW2d 509 (1997). With an umbrella policy, liability attaches when the insured has exhausted the limits of an underlying insurance policy. *Id*. at 296. In this case, it was undisputed that Chief Switalski was an insured under the umbrella policy that Employers issued to the township. But Employers argued to the trial court that the umbrella policy did not apply to the UIM coverage at issue because (1) the UIM coverage was not listed on the declarations page of the umbrella policy, and (2) the umbrella policy excluded coverage for losses payable under uninsured or underinsured motorist law.[6]

Under the terms of the umbrella policy, Employers agreed to pay "on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." The umbrella policy applies only to bodily injury or property damage subject to a "retained limit." The policy defines the term "retained limit" to mean the "available limits of 'underlying insurance' scheduled in the Declarations . . ." The term "underlying insurance" is defined to mean "any *policies* of insurance listed in the Schedule of 'underlying insurance' " (emphasis added).[7] In the schedule of underlying insurance, Employers

---

[6] On appeal, Employers also argues that it was entitled to summary disposition because the umbrella policy only applied to obligations that the insured becomes liable to pay to a third party. But Employers did not raise this argument in the trial court and thus it has waived it. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3. Although we have the discretion to consider issues that were not properly preserved in the trial court, *Miller v Mich Dep't of Corrections*, __ Mich App __, __; __ NW2d __, (2022) (Docket No. 356430); slip op at 7, we must exercise that discretion sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987). Accordingly, we decline to address this unpreserved argument.

[7] Notably, this language looks to "policies of insurance" rather than specific coverages.

identified the underlying policy issued by Hamilton with the policy number "3E65035." The title page of the commercial auto policy issued by Hamilton stated that it was policy "3E65035." The umbrella policy plainly lists the auto policy as underlying insurance to which excess coverage applies, which would encompass all coverages under the auto policy including UIM coverage.

We further conclude that the exclusionary clause cited by Employers is inapplicable. It is an insurer's burden to establish that an exclusion negates coverage. *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014). And "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Id.* (cleaned up). Employers maintains that its umbrella policy excluded coverage for "[a]ny loss, cost or expense payable under or resulting from any first-party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law." This exclusion does not exclude any and all losses associated with uninsured or underinsured coverage; it only applies to a "loss, cost or expense" that becomes "payable under or resulting from . . . uninsured or underinsured motorist law." Under the plain terms of the exclusion, the loss must be payable or result from the applicable law. But Michigan law does not mandate payment of losses arising from an underinsured motorist. UIM coverage is optional; it is not imposed by statute or "law." Accordingly, this exclusion does not apply by its own terms.

Affirmed.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel

-8-