# STATE OF MICHIGAN

# COURT OF APPEALS

HOME-OWNERS INSURANCE COMPANY,

　　　　Plaintiff-Appellee,

v

GREAT NORTHERN INSURANCE COMPANY,

　　　　Defendant-Appellant.

UNPUBLISHED
June 26, 2018

No. 339158
Ingham Circuit Court
LC No. 16-000712-CB

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

In this dispute between insurance companies over the order of priority for paying personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, defendant, Great Northern Insurance Company, appeals as of right the trial court's order granting summary disposition in favor of plaintiff, Home-Owners Insurance Company, pursuant to MCR 2.116(C)(10); declaring defendant to be the higher priority insurer responsible for paying the PIP benefits at issue; and entering a judgment in favor of plaintiff for $50,625.25. For the reasons set forth in this opinion, we reverse the order of the trial court and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of an accident involving a single vehicle that occurred on May 28, 2016. Matthew Theisen was at home that day when Susan Tyson arrived. At that time, Theisen and Tyson were married, and they had an automobile insurance policy with plaintiff covering their personal vehicles. Tyson arrived in a van that was owned by her employer, Advanced Inventory Solutions, and that was insured by defendant. The home was located in a trailer park. Theisen's truck was parked directly across the street from his home in an empty space where no trailer was parked. Tyson parked her work van between Theisen's home and his truck, apparently in the road. The van was parked perpendicular to the back end of the truck.

Theisen testified during his deposition that he and Tyson got into an argument when she arrived. At some point, Tyson took the registration and proof of insurance out of Theisen's truck, and Theisen followed Tyson back to her work van. While the van door was still open, Theisen got between the door and the driver's seat, where Tyson was sitting, and asked for his paperwork back. Tyson put the paperwork on the center console of the van, and Theisen reached

-1-

over her to grab the paperwork from the center console. Theisen explained what happened next during the following exchange:

> [*Theisen*]: And then as I went to go reach for my paperwork, she threw it into drive. The next thing I know I got caught up into something. I was dragged it felt like forever. I don't know what I was caught on. I could not see because I was too busy on the ground, dragging.
>
> [*Plaintiff's Counsel*]: When she put the vehicle into gear, did you grab onto the door at all to stabilize yourself? Like the frame of the door, do you know if you were on that at all to try to keep from falling?
>
> [*Theisen*]: I could have been, but I'm not a hundred percent sure what I grabbed. I don't even think I grabbed anything. I'm not a hundred percent sure. It all happened so fast.

Theisen also testified that he remembered grabbing something in the car, that "[i]t was either the frame or the seat belt," and that he did not know what he was holding. Theisen further explained, "I was on—it felt like I was on the vehicle, like on the side of the vehicle" and that the vehicle was carrying him. One foot was dragging and one foot was up in the air. He thought that he was dragged for "maybe 5 to 8 feet." Theisen was holding onto the van while it was moving in order to avoid falling. Theisen testified that he did not intend to get into the vehicle, that he was not inside the vehicle, and that he was not standing on any part of the vehicle at the time. According to Theisen, he was eventually "released" and then the back wheel of the van rolled over him. Theisen sustained injuries.

Tyson, in her deposition, described Theisen's initial approach to the van as follows:

> As soon as I had sat down in my vehicle, as I was putting it in drive I was actually closing my door. And that's when he grabbed ahold of the door and ripped it open as I had just started to move. He put his one hand—left hand on my—the door, where the door handle is on the van, and he put his right hand on my arm. And I yelled at him and I told him to let go of me and he said no.
>
> . . . And I says, "Matt, you need to let go of me." And he said, "No." And then he took his hand off of the door and grabbed ahold of my steering wheel. And by this time I had already started moving.

Tyson further explained that Theisen used his right hand to grab her left hand or arm, which was resting on her left leg. Tyson testified that Theisen was outside the vehicle at this point, standing next to the van. The door was open. Theisen moved his left hand from the outside door handle to the steering wheel. Tyson also testified that Theisen grabbed her left arm with both of his hands and never attempted to reach over her to get the paperwork from the van. According to Tyson, as the van started moving forward, Theisen was walking next to the van. Tyson admitted that she could not see Theisen's feet, but she assumed that he was walking because he was not "dipped down." She did not think that Theisen was ever standing on the running board of the vehicle. Tyson explained that Theisen was at eye level with her during the incident and that "if you stand next to the van that's where he would be at, because the running

board is a good foot and a half off the ground." Tyson did not know how Theisen fell off, and she did not realize that he had fallen until she felt the back of the van run over him.

Kyle Radics, a coworker and friend of Tyson's, testified during his deposition that he was a passenger in Tyson's work van on the day of the accident. Radics was in the front passenger seat of the van, and he was still inside the van when Tyson got inside after taking the registration and insurance from Theisen's truck. According to Radics, Tyson was closing the driver side door to the van and the van was already in drive when Theisen swung the door open and tried to reach over Tyson. Theisen never reached through the driver side window. Radics testified that he saw Theisen's hand on Tyson's arm and that Theisen never reached past Tyson's left arm. Radics further testified that Theisen was "hanging out of" the van, that he did not know if Theisen was actually holding any part of the van, and that Tyson's arm was the only thing Theisen was holding. Radics thought that Theisen was walking alongside the van at first, and he did not think that Theisen could have been dragged by the vehicle once he fell to the ground. According to Radics, the van never went in reverse during the incident. Although Radics' statement in the police report indicated that Theisen let go of Tyson after being dragged and before the van ran over him, Radics maintained in his deposition that he never indicated that Theisen was dragged by the van.

Larry Aldrich, a neighbor of Theisen's, testified during his deposition that he was driving home that day when he saw Theisen and Tyson outside the van arguing. As Aldrich was backing into his own driveway, he saw Theisen reaching into the van through the driver side window with his feet on the ground. Aldrich was approximately 50 yards away. Aldrich described the accident as follows:

> And then I saw the van go into reverse and pull out into the road. He fell off of the van. She put it in drive to take off and I think that's when she ran over him.

According to Aldrich, Theisen was hanging onto the van and being carried by it as the van backed up. Aldrich did not know what Theisen was holding. Aldrich explained that the incident "happened really quick" and that he looked away at one point. According to Aldrich, the door to the van was closed while Theisen was reaching his arm through the window. Aldrich testified that his statement in the police report—that Theisen was "dragged alongside the van" and was run over after he fell—was accurate. Aldrich did not know if Theisen's feet were on the ground or off the ground while he was being dragged. However, Aldrich also testified that Theisen was walking alongside the van for some amount of time and was not being dragged by the van. Additionally, Aldrich testified that

> [h]is arm was in the window. I don't think he was actually hanging on the vehicle until it went into motion and he lost his footing.

On September 16, 2016, plaintiff initiated this lawsuit seeking reimbursement from defendant for PIP benefits that plaintiff paid to Theisen, as well as a declaratory judgment that defendant was the priority insurer and was required to pay future PIP benefits. Plaintiff alleged that because Theisen was Tyson's spouse and was an occupant of the van that was owned by Tyson's employer and insured by defendant, MCL 500.3114(3) provided that defendant was the priority insurer obligated to pay Theisen's PIP benefits.

Plaintiff subsequently moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no dispute that Theisen was in or upon the van while it was moving and that he was therefore an occupant of the vehicle that was owned by his wife's employer and insured by defendant. Plaintiff relied on dictionary definitions, arguing that "upon" meant "on" and that "on" was a word used to indicate "physical contact with another object."

In response, defendant argued that plaintiff was the higher priority insurer because Theisen was not an occupant of the van and MCL 500.3114(3) therefore did not apply. Defendant argued that plaintiff was attempting to improperly expand the applicable definition of "occupant" by equating "occupying" with "simply touching a vehicle." Defendant further argued that Theisen was not an occupant because merely having physical contact with the vehicle did not mean he was "upon" the vehicle and merely having his arm in the vehicle did not mean that Theisen was actually "inside" the vehicle.

A hearing was held on the motion, and the trial court announced its ruling from the bench. The trial court stated that "part of [Theisen's] body was inside the vehicle," that "[h]is arm was inside the vehicle and there was some physical contact between him and the vehicle, be it the steering wheel or the door or the window area of the vehicle." The trial court concluded that these facts, along with the facts that the vehicle was in motion at some point and was "actually transporting" Theisen, meant that there was "more than mere contact." The trial court explained this point further:

> The vehicle being in motion supports that first of all there's obviously contact with the vehicle and second, that the vehicle's not just in motion but it's actually transporting Mr. Theisen whether he's being dragged or whether he's walking along the veh--, alongside the vehicle, he is voluntarily using the vehicle to transport him because he's hanging on to something inside and he's moving along with the vehicle.

The trial court concluded in announcing its ruling as follows:

> Because, he's hanging onto the vehicle, which is what initiated this and what is occurring throughout. There's no indication that somehow he's attached to the vehicle in a way that he can't extricate himself. He's voluntarily attached himself onto the vehicle with part of his body into it hanging onto it and moving his feet as the vehicle moves because the vehicle is forcing him to do such, forcing him to move his feet, not forcing him to stay attached to the vehicle.
>
> So, I would say that Mr. Theisen is really in a similar situation to the person in *Farm Bureau*. Actually, an almost identical situation to the person in *Farm Bureau* except that he wasn't on top of the vehicle so he wasn't in contact with the hood.[1] He was in contact with the side of the vehicle. But if 'upon'

---

[1] In *Farm Bureau Mut Ins Co v MIC Gen Ins Corp*, 193 Mich App 317, 319, 320, 324-325; 483 NW2d 466 (1992), discussed in more detail below, this Court held that a claimant who was

includes 'on' and 'on' means physical contact with something, then Mr. Theisen was on the vehicle when he was in contact with the side of it and he proceeded to move with part of his body inside of it and allowed the vehicle to move him in that situation.

So again, there's more than mere contact. There is entry of part of his body into the vehicle and there is the vehicle moving and actually transporting Mr. Theisen along while he's in this situation. And for those reasons, I think it satisfies the definition of 'occupying' both in the No-Fault priority provision and in the policies of Homeowners and Great Northern's. And therefore, I am going to grant the plaintiff's Motion for Summary Disposition and for Declaratory Judgment that defendant Great Northern Insurance Company has priority under the No-Fault Act.

The trial court entered an order granting plaintiff's motion for summary disposition for the reasons stated on the record and declaring that defendant was the higher priority insurer responsible for paying PIP benefits on behalf of Theisen pursuant to MCL 500.3114(3). This appeal ensued.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a summary disposition motion to determine if the moving party was entitled to judgment as a matter of law." *Bergman v Cotanche*, 319 Mich App 10, 15; 899 NW2d 754 (2017). "[T]he Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

"A motion for summary disposition under MCR 2.116(C)(10) requires the reviewing court to consider the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.* "[A] court may not weigh the evidence before it or make findings of fact; *if the evidence before it is conflicting*, summary disposition is improper." *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003) (quotation marks and citation omitted). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009). Additionally, "[t]he trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party,

---

holding onto the hood of a car while it drove for several blocks before striking another vehicle was an "occupant" of the car for purposes of the priority statutes in the no-fault act.

rather than the moving party, is entitled to judgment as a matter of law." *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

"Questions of law, including statutory interpretation, are reviewed de novo on appeal." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

### III. ANALYSIS

The central dispute between the parties in this case concerns which insurer is ultimately liable for paying Theisen's PIP benefits under the no-fault act's priority rules, set forth in MCL 500.3114 and MCL 500.3115. Specifically, the issue concerns whether Theisen was, for purposes of MCL 500.3114(3), an "occupant" of the van that was involved in the accident and insured by defendant.

"[G]enerally an injured person is required to seek compensation from his own no-fault insurer, regardless of whether that person's insured vehicle is involved in the accident." *Farmers Ins Exch v AAA of Michigan*, 256 Mich App 691, 695; 671 NW2d 89 (2003). This general rule is found in MCL 500.3114(1), which is the "default rule for priority" under the no-fault act, *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 215; 895 NW2d 490 (2017). The statutory provision provides in pertinent part that "[e]xcept as provided in subsections (2), (3), and (5),[2] a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." MCL 500.3114(1).

Pursuant to MCL 500.3115(1), the general rule of § 3114(1) is applicable if an individual is *not* an occupant of a motor vehicle:

> (1) *Except as provided in subsection (1) of section 3114*, a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) Insurers of owners or registrants of motor vehicles involved in the accident.
>
> (b) Insurers of operators of motor vehicles involved in the accident. [MCL 500.3115(1) (emphasis added).]

Our Supreme Court has explained that pursuant to the first clause of § 3115(1), "§ 3114 operates to identify the primarily applicable coverage" when an injured person is determined to have not been an occupant of a motor vehicle when the injury occurred. *Royal Globe Ins Cos v Frankenmuth Mut Ins Co*, 419 Mich 565, 569; 357 NW2d 652 (1984).

---

[2] Subsections (2) and (5) are not at issue in this case. Subsection (3) is discussed below.

Accordingly, plaintiff, as Theisen's insurer, would be the higher priority insurer if Theisen was not an occupant of the van, which was the only motor vehicle involved in the accident that caused his injuries. MCL 500.3114(1); MCL 500.3115(1). "[A]n injured person is generally required to seek compensation from his own no-fault insurer even where that person's insured vehicle is not involved in the accident." *Farmers Ins Exch*, 256 Mich App at 696 (quotation marks and citation omitted); see also *Lee v Detroit Auto Inter-Ins Exch*, 412 Mich 505, 509; 315 NW2d 413 (1982) ("[I]t is the policy of the no-fault act that persons, not motor vehicles, are insured against loss.").

However, this dispute concerns the provision in MCL 500.3114(3), which is an exception to the general rule contained in § 3114(1). Section 3114(3) provides as follows:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury *while an occupant of a motor vehicle owned or registered by the employer*, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle. [Emphasis added.]

In this case, there is no dispute that the van driven by Tyson was owned by her employer, that defendant insured the van, or that Theisen and Tyson were married at the time of the accident. Thus, resolution of this case depends on whether Theisen was actually "an occupant" of the van for purposes of § 3114(3). Notably, in making this determination for purposes of discerning the order of priority under MCL 500.3114, it is the statute that controls rather than the language of the parties' insurance policies. As our Supreme Court has explained,

> PIP benefits are mandated by statute under the no-fault act, MCL 500.3105, and, therefore, the statute is the "rule book" for deciding the issues involved in questions regarding awarding those benefits. On the other hand, the insurance policy itself, which is the contract between the insurer and the insured, controls the interpretation of its own provisions providing benefits not required by statute. [*Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993) (*Rohlman I*).]

Therefore, because the question before this Court in the instant case involves how to apply the priority statutes to award PIP benefits that Theisen already received, it is the statute that provides the " 'rule book' " for analysis. *Id*. The term "occupant" is not defined in § 3114, nor is it defined elsewhere in the no-fault act.

In *Royal Globe*, 419 Mich at 575, our Supreme Court held that the word "occupant" in MCL 500.3114(3) was to be given "a literal construction," by assigning the word "its primary and generally understood meaning." Like the instant case, *Royal Globe* involved a priority dispute between insurance companies over which insurer was responsible for paying no-fault benefits where an insured's spouse was injured in a single motor vehicle accident involving a vehicle owned by the insured's employer. *Id*. at 567-568. In *Royal Globe*, Mr. and Mrs. Karam arrived at home in a vehicle owned by Mr. Karam's employer and insured by the plaintiff insurance company. *Id*. Mr. Karam also owned a vehicle that was insured by the defendant insurance company. *Id*. at 568. After Mr. Karam parked the employer-owned vehicle, Mrs.

Karam got out of the vehicle and walked to the back door, which was inside the garage. *Id*. As she was looking for her keys, Mr. Karam attempted to back the vehicle into the garage, but he lost control and accidentally struck Mrs. Karam. *Id*.

Accordingly, the narrow issue before the *Royal Globe* Court became whether Mrs. Karam was an "occupant" of the employer-owned motor vehicle at the time of the injury for purposes of MCL 500.3114(3). *Id*. at 567, 568-569. The Court concluded that the defendant insurer, who insured Mr. Karam's private vehicle, was the higher priority insurer under the no-fault act's priority statutes because Mrs. Karam was *not* an occupant of the employer-owned vehicle when she was injured, reasoning that she had left the vehicle and walked approximately 60 feet to the rear of the garage when she was hit by the vehicle. *Id*. at 576. The *Royal Globe* Court did not explicitly define the "primary and generally understood meaning" of the term "occupant," noting that the case before it did not present any difficulty in determining whether Mrs. Karam was an occupant of the vehicle. *Id*. at 575-576. However, the Court did include the following explanation:

> Whether in another case, on other facts, it will be appropriate to construe the meaning of the statutory term "occupant" as used in § 3114 and § 3115 as including persons within and upon a motor vehicle as well as those entering into and alighting from it remains to be seen. It is certainly unnecessary, and indeed inappropriate for us to do so on the facts before us. [*Id*. at 576.]

In *Farm Bureau Mut Ins Co v MIC Gen Ins Corp*, 193 Mich App 317, 324; 483 NW2d 466 (1992), another priority dispute case, this Court held that the primary and generally understood meaning of the statutory term "occupant" in the no-fault act was best defined as " 'in or upon.' " In reaching this conclusion, the *Farm Bureau* Court relied on *Royal Globe* and reasoned that "[a]lthough the Supreme Court left unresolved in *Royal Globe* the issue whether persons 'entering into or alighting from' a vehicle are 'occupants,' the Court appeared to assume without difficulty that persons 'in or upon' a vehicle are 'occupants' as the term is used in the no-fault act." *Farm Bureau*, 193 Mich App at 324. The claimant of PIP benefits in *Farm Bureau* was injured after he jumped onto the hood of a car and held on as the car traveled for several blocks before striking another vehicle. *Id*. at 319. The claimant was thrown from the hood of the car and was injured. *Id*. This Court concluded that the claimant was an "occupant" of the car for purposes of the priority statutes in the no-fault act "because he was 'upon' the vehicle while he was being transported on its hood for several blocks." *Id*. at 320, 324-325.

In *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 249; 661 NW2d 562 (2003), our Supreme Court held that "[a] person must be *physically inside* a vehicle to be an 'occupant' of it under the no-fault act."[3] The *Rednour* Court concluded that the injured party, who was outside

---

[3] The *Rednour* Court was discussing MCL 500.3111, which is the provision applicable to the availability of PIP benefits for injuries suffered in an accident occurring outside Michigan. However, the pertinent language of MCL 500.3111 is almost identical to the language of MCL 500.3114(3) that is at issue in the instant case. Section 3111 provides in pertinent part that "[p]ersonal protection insurance benefits are payable for accidental bodily injury suffered in an

the vehicle he had been driving and six inches away from it when another vehicle struck him, was not an " 'occupant' " for purposes of § 3111 because he was not physically inside the vehicle during the accident. *Id*. at 242, 249. Furthermore, the *Rednour* Court also concluded that the injured party was not " 'upon' " the vehicle when he was pinned against it after being struck by the second vehicle such that he was " 'occupying' " the original vehicle for purposes of coverage under the insurance policy because "[p]hysical contact by itself does not . . . establish that a person is 'upon' a vehicle such that the person is 'occupying' the vehicle," and that it was clear that a person "must be *on* or *up and on* a vehicle in order to be 'upon' it." *Id*. at 249-250.[4] In reaching this conclusion, our Supreme Court "reject[ed] dicta in [*Rohlman v Hawkeye-Security Ins Co (On Remand)*, 207 Mich App 344; 526 NW2d 183 (1994) (*Rohlman II*)] that suggests physical contact alone may be sufficient to show that the person was 'upon' the vehicle so as to be 'occupying' the vehicle." *Rednour*, 468 Mich at 250.[5] Additionally, although plaintiff claims on appeal in the instant case that the *Rednour* Court stated that "on" is the

---

accident occurring out of this state, if the accident occurs within the United States, its territories and possessions or in Canada, and the person whose injury is the basis of the claim was at the time of the accident . . . *an occupant of a vehicle* involved in the accident whose owner or registrant was insured under a personal protection insurance policy or has provided security approved by the secretary of state . . . ."

[4] We note that the issue in *Rednour* involved coverage and whether the injured party was entitled to PIP benefits at all when he was injured while driving a friend's car in Ohio. *Rednour*, 468 Mich at 242-243. Thus, the *Rednour* Court addressed both the meaning of "occupant" under § 3111 of the no-fault act and the definition of "occupying" in the applicable insurance policy. *Rednour*, 468 Mich at 244-245, 249-251. However, we conclude that this discussion in *Rednour* is nonetheless informative to the analysis in the instant case because it involved construing the same word—"upon"—that has been attached to the definition of the statutory term "occupant." Although it is the statutory language that is at issue in the instant case, the policy definition in *Rednour* was similar to, although slightly broader than, the way Michigan appellate courts have interpreted the statutory term "occupant"; the policy definition in *Rednour* of " 'occupying' " was " 'in, upon, getting in, on, out or off.' " *Id*. at 245.

[5] In *Rohlman II*, this Court noted dictionary definitions that "use[d] the word 'upon' interchangeably with 'on.' " *Rohlman II*, 207 Mich App at 356. The *Rohlman II* Court also stated as follows:

> [W]e are not persuaded that the term "on" or "upon" requires that an object or person be positioned so that the object or person is totally and completely in contact with or supported by the underlying object or person. For example, we might say that the child was "on" his scooter, understanding that one foot was on the scooter while the other foot was pushing on the ground, or that a secretary is working "on" a computer, or is "on" the telephone, although the secretary's body is not totally in contact with either instrument. We conclude, then, that the term "upon" in the definition of "occupying" means, at a minimum, some physical contact with the covered auto. [*Id*. at 357.]

-9-

equivalent of "upon," the language cited by plaintiff is merely part of the *Rednour* Court's recitation of the *Rohlman II* Court's reasoning. *Rednour*, 468 Mich at 248.

In a footnote, the *Rednour* majority responded to a point made by the dissent, and this response is especially pertinent to the instant appeal in light of the broad definition of "occupant" advanced by plaintiff and adopted by the trial court below:

> The dissent, citing plaintiff's assertion that he was injured when he was pinned between the two cars, concludes that plaintiff has alleged sufficient facts to enable a jury to conclude that he was "on" or "upon" the insured vehicle when the accident occurred. However, this analysis fails to take account *that "on" or "upon" must be interpreted in the context of the word that they are defining: "occupying."* The dissent ignores the definitional word itself because it cannot be said that plaintiff here was "occupying" the vehicle in question, however broadly "on" and "upon" are defined. Further, the arbitrariness of the dissent's interpretation must be noted. Under the dissent's reasoning, if there are two persons who are struck by a vehicle while in the vicinity of the insured vehicle, and if one is thrown into the insured vehicle while the other is thrown into a tree, a highway, a curb, or a fence, only the former would be covered by the policy as interpreted by the dissent. Such happenstance does not form a rational basis for understanding the scope of coverage under an insurance policy. [*Id*. at 250 n 2 (emphasis added).]

In this case, it appears that the trial court essentially defined "occupant" as being in "physical contact" with the vehicle. The trial court explained in announcing its ruling that Theisen "was in contact with the side of the vehicle" and that "if 'upon' includes 'on' and 'on' means physical contact with something, then Mr. Theisen was on the vehicle when he was in contact with the side of it and he proceeded to move with part of his body inside of it and allowed the vehicle to move him in that situation." However, our Supreme Court has specifically rejected this notion that physical contact alone may demonstrate that a person was "upon" a vehicle and thus occupying it. *Rednour*, 468 Mich at 250. Instead, the statutory term "occupant" has been defined for purposes of the no-fault act to mean "in or upon," *Farm Bureau*, 193 Mich App at 324. Our Supreme Court has defined "occupant" to require that the "person must be *physically inside* a vehicle." *Rednour*, 468 Mich at 249. The *Rednour* Court also stated that being "upon" the vehicle means being "*on* or *up and on*" the vehicle. *Id*. at 250.

In this case, the trial court found that Theisen was being transported by the van whether he was being dragged or whether he was walking alongside the vehicle as it moved. Such a factual scenario is not in accordance with the above statements of our Supreme Court and is distinguishable from the factual circumstances in *Farm Bureau*. Neither the situation in this case nor the one in *Farm Bureau* presents a typical manner of riding in a motor vehicle. But the claimant in *Farm Bureau* was nonetheless "up and on" the vehicle as he held onto the hood of the vehicle while it drove for several blocks, and he was thus on top of a portion of the vehicle in a way that a person in contact with the side of a moving vehicle and being dragged alongside (or walking alongside) it would not be. It is doubtful that the "primary and generally understood meaning" of the word occupant would include merely being dragged alongside a vehicle or being moved by the vehicle while having some contact with it. *Royal Globe*, 419 Mich at 575. Such a

-10-

conclusion is in accordance with our Supreme Court's observation that the words "on" and "upon" must be interpreted in the context of the word they are defining, which in this case is the word "occupant." *Rednour*, 468 Mich at 250 n 2. Similarly, the requirement that a person be physically inside the vehicle must mean more than merely having a limb inside the vehicle, or being between the open door and the passenger compartment, *as the individual is dragged or moved along* outside the vehicle on the ground. *Id*. Thus, the trial court erred as a matter of law in applying a definition of the statutory term "occupant" that essentially reduced the term to mere physical contact; this definition is too broad and has been rejected by our Supreme Court. *Rednour*, 468 Mich at 250.[6]

This conclusion, however, does not end our analysis. The trial court found that Theisen was actually transported by the van, explaining as follows:

> The vehicle being in motion supports that first of all there's obviously contact with the vehicle and second, that the vehicle's not just in motion but it's actually transporting Mr. Theisen whether he's being dragged or whether he's walking along the veh--, alongside the vehicle, he is voluntarily using the vehicle to transport him because he's hanging on to something inside and he's moving along with the vehicle.

Furthermore, in concluding that the circumstances of this case were analogous to those of *Farm Bureau*, the trial court stated that

> he's hanging onto the vehicle, which is what initiated this and what is occurring throughout. There's no indication that somehow he's attached to the vehicle in a way that he can't extricate himself. He's voluntarily attached himself onto the vehicle with part of his body into it hanging onto it and moving his feet as the vehicle moves because the vehicle is forcing him to do such, forcing him to move his feet, not forcing him to stay attached to the vehicle.

However, the record contains materially conflicting accounts of the events leading up to Theisen's injuries. Theisen testified that he was between the door and the driver's seat of the van when it started to move and that he "got caught up into something." According to Theisen, he was dragged by the van and he did not think that he grabbed anything. He also testified that he grabbed the frame or the seatbelt. Theisen indicated that he was not standing on any part of the

---

[6] Defendant argues on appeal that the trial court improperly conflated the concepts of defining "occupant" under the no-fault act and defining that term for purposes of an insurance policy. However, it appears from our review of the record that the trial court was merely acknowledging that the language in the parties' policies was the same as the definition applied to the statutory term "occupant" by this Court in *Farm Bureau*. It does not appear that the trial court relied on any of the additional language in the policies that could potentially expand the definition of occupant. Thus, while the trial court erroneously expanded the definition "in or upon" to essentially include any physical contact with the vehicle, the trial court did not err by noting that the policy definition also contained the terms in or upon.

van. Similarly, Tyson testified that Theisen was not standing on the running board of the van because he was at eye level with her, which is where he would have been if he were standing on the ground. Tyson also testified that the door was open and that Theisen was walking next to the van as the van started moving forward.[7] According to Tyson, Theisen was holding her arm and the steering wheel. Aldrich testified that Theisen was hanging onto the van and being carried by it as the van backed up, although he also testified that Theisen was dragged alongside the van and that he was walking alongside the van.

However, the trial court improperly made findings of fact by concluding that Theisen was hanging onto something inside the vehicle and "voluntarily" using the vehicle to transport himself. There was no evidence that Theisen voluntarily used the vehicle for the purpose of transportation, and there was conflicting evidence regarding whether Theisen grabbed anything and was up and on the van while being carried by it or whether he was merely "caught" by some part of the van and dragged alongside it. The trial court ignored the conflicting testimony and instead resolved factual discrepancies in describing how it believed the incident unfolded. By engaging in judicial fact-finding on a motion for summary disposition, the trial court erred. *Lysogorski*, 256 Mich App at 299.

Because a genuine issue of material fact exists in this matter, *West*, 469 Mich at 183, we reverse and remand for further proceedings consistent with this opinion. Defendant, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello

---

[7] Plaintiff argues on appeal that Tyson's testimony that Theisen was walking next to her was "mere speculation" and is insufficient to create an issue of material fact that would make summary disposition improper. Plaintiff relies on *Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001), for the proposition that "parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact . . . . A conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." (Quotation marks and citation omitted; ellipsis in original.) But plaintiff's argument is without merit because Tyson's testimony on this point was not speculative. She explained her reasons for concluding that Theisen was walking alongside the van and was not standing on the running board; Tyson testified that Theisen was not "dipped down" and that he was at eye level with her, which is where he would have been located if he was standing on the ground. Thus, Tyson's conclusion was not a conjecture but was instead based on a reasonable inference that was deducible from facts known to her about the height of her husband, the height of the van, and the height of the running board. *Id*.

-12-