*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAN MARIE LYNCH, formerly known as JAN
MARIE ATCHLEY,

       Plaintiff-Appellee,

v

KYLE OGDEN STONE, FRED NILES, and
ROBERT B. FLORIAN,

       Defendants,

and

FREMONT INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 362922
Manistee Circuit Court
LC No. 21-017487-NF

JAN MARIE LYNCH, formerly known as JAN
MARIE ATCHLEY,

       Plaintiff-Appellee,

v

KYLE OGDEN STONE, ROBERT B. FLORIAN,
and FREMONT INSURANCE COMPANY,

       Defendants,

and

FRED NILES,

       Defendant-Appellant.

No. 363654
Manistee Circuit Court
LC No. 21-017487-NF

-1-

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM

These consolidated appeals arise from two successive automobile accidents in which plaintiff was rear-ended by defendant Niles, exited her truck to examine the damage, then was struck by defendant Stone. In Docket No. 362922, defendant Fremont Insurance Company (Fremont) appeals by leave granted[1] the trial court's order denying its motion for summary disposition made pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Fremont argues that plaintiff is not entitled to underinsured motorist coverage because she was not occupying the truck when defendant Stone hit her. We reverse.

In Docket No. 363654, defendant Fred Niles appeals by leave granted[2] the trial court's separate order denying his motion for summary disposition made pursuant MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and MCR 2.116(C)(10). Niles argues that he did not play any role in causing the second accident and therefore cannot be found liable. We affirm.

I. BACKGROUND

On November 6, 2019, plaintiff was driving a pickup truck owned by her then-boyfriend (later, her husband), John Lynch on a snowy day in Manistee. Lynch's truck was insured by defendant Fremont Insurance Company. Plaintiff was stopped at a red traffic light when Niles, who was driving behind plaintiff, slid into the back of plaintiff's vehicle at a low speed. Plaintiff was not injured, and only Niles's vehicle sustained damage. Plaintiff and Niles pulled over to the right side of the road and got out to assess the damage. They agreed that plaintiff's truck was undamaged. Plaintiff was at the left rear side of the truck when defendant Kyle Ogden Stone, driving a minivan, owned by defendant Robert Florian, lost control while approaching from behind on the left and crushed one of plaintiff's legs between the minivan's front bumper and the rear quarter panel of plaintiff's truck. Plaintiff commenced this action, alleging tort negligence against Niles and Stone. Plaintiff also sought underinsured motorist benefits under the policy issued by Fremont.

In Docket No. 262922, Fremont moved for summary disposition, arguing that plaintiff was not "occupying" the truck within the meaning of the insurance policy when she was struck, so she was not entitled to underinsured motorist benefits. In Docket No. 363654, Niles moved for summary disposition, arguing that he did not proximately cause plaintiff's injury. Niles did not seriously dispute but-for causation; rather, he argued that there were two accidents, that he was only potentially responsible for the first accident, that plaintiff was not injured in the first accident,

---

[1] *Lynch v Stone*, unpublished order of the Court of Appeals, entered April 3, 2023 (Docket No. 362922).

[2] *Lynch v Stone*, unpublished order of the Court of Appeals, entered April 3, 2023 (Docket No. 363654).

and that the first accident was complete when plaintiff got injured. The parties disputed the extent to which the second accident was a foreseeable consequence of the first accident and whether Niles parked in a negligent manner that directly contributed to the second accident. The trial court denied both motions for summary disposition, and these appeals followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Summary disposition should be granted pursuant to MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

A motion for summary disposition pursuant to MCR 2.116(C)(8) tests a complaint's legal sufficiency. *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 623; 971 NW2d 716 (2021). "A motion for summary disposition under MCR 2.116(C)(8) is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery." *Id*. When considering a motion made under this rule, this Court accepts "all well-pleaded factual allegations as true to determine the legal sufficiency of the complaint." *Farish v Dep't of Talent and Economic Dev*, 336 Mich App 433, 439 n 3; 971 NW2d 1 (2021).

Finally, the interpretation of an insurance contract is reviewed de novo. *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III. DOCKET NO. 362922—FREMONT

Fremont argues that the trial court erred by denying its motion for summary disposition because plaintiff was not "getting in" the truck at the time of the accident. We reverse.

The insurance contract at issue provides that Fremont "will pay compensatory damages an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** for **bodily injury** which" resulted from an accident involving an uninsured motor vehicle. The issue in this case is whether plaintiff was an "insured." As pertinent to this case, the policy defines "insured" to include a "person **occupying your covered auto**." Thus, the issue becomes whether plaintiff was "occupying" the truck. The policy provides, "**Occupying** means in, getting in, or getting out." In this case when reasonable inferences and credibility issues are resolved in plaintiff's favor, the evidence supports the following narrative: at the time of the accident (1) plaintiff was on the driver's side of the truck, near the back; (2) plaintiff was walking toward the front of the truck; and (3) plaintiff intended to open the driver door and enter the truck's cab. The determinative issue is whether, in this scenario, plaintiff was "getting in" the truck.

A.  GOVERNING LAW

"Like uninsured-motorist benefits, underinsured-motorist coverage is not required by Michigan law, and the terms of coverage are controlled by the language of the contract itself, not by statute." *Dawson v Farm Bureau Ins Co of Mich*, 293 Mich App 563, 568; 810 NW2d 106 (2011).  "An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties."  *Hunt v Drielick*, 496 Mich 366, 372; 852 NW2d 562 (quotation marks and citation omitted).  If an insurance policy does not define a term, it is appropriate for this Court to consult a dictionary to ascertain the plain and ordinary meaning of the term.  *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145, 147-148; 871 NW2d 530 (2015).  Words and phrases in a contract "must be construed in context and read in light of the contract as a whole."  *Id*. at 153.  The rights and limitations of underinsured motorist coverage "are purely contractual and are construed without reference to the no-fault act."  *Rory v Continental Ins Co*, 473 Mich 457, 466; 703 NW2d 23 (2005).  However, it is not improper for a court to take note that the meaning of a policy term is harmonious with the meaning of similar terms in the no-fault act.  See *Wasik v Auto Club Ins Ass'n*, 341 Mich App 691, 703-704, 703 n 4; 992 NW2d 332 (2022).  Although courts should construe ambiguities in insurance contracts in favor of the insured, they must enforce plain and unambiguous contracts as written and may not impose "some alien construction merely for the purpose of benefitting an insured." *Duato v Mellon*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362823); slip op at 4 (quotation marks and citation omitted).

B.  DEFINING AND APPLYING "GETTING IN"

The bulk of the caselaw regarding the definition of occupancy with respect to uninsured motorist coverage pertains to how the word "upon" is interpreted.  See, e.g., *Rohlman v Hawkeye-Security Ins Co*, 207 Mich App 344, 355-357; 526 NW2d 183 (1994).  This is because "upon" is commonly used in the definition of "occupant."  For example, in *Roholm*, the policy defined the term to mean "in, upon, getting in, on, out or off."  *Id*. at 351 (quotation marks omitted).  Notably, the policy in this case omitted both "upon" and "getting off," so we are left to define "getting in."

There does not appear to be any caselaw defining "getting in" for the purposes of an insurance contract,[3] but there is useful guidance to be found in the caselaw regarding Section 3106 of The Insurance Code of 1956, MCL 500.1 *et seq*.  Section 3106 provides in relevant part that "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of

_____

[3] The closest is a Supreme Court case in which the driver exited a car to tend to a flat tire.  *Rednour v Hastings Mut Ins Co*, 468 Mich 241, 243; 661 NW2d 562 (2003).  The driver "left the car, loosened the lug nuts, and began to walk toward *the rear of the car*" when he was struck by an oncoming car.  *Id*. at 242 (emphasis added).  This case is not helpful because the driver so clearly was not getting in the car at the time of the accident that the Court did not engage in any discussion of the exact confines of the term.  *Id*. at 249.

a parked vehicle as a motor vehicle unless . . . the injury was sustained by a person while occupying, *entering into*, or alighting from the vehicle." MCL 500.3106(1)(c) (emphasis added). There are several published cases explaining what it means to enter into a vehicle for the purposes of this statute, and these cases generally suggest that physical contact with the vehicle is necessary. In *King v Aetna Casualty and Surety Co*, 118 Mich App 648, 649-650; 325 NW2d 528 (1982),[4] the plaintiff removed the car keys from his pocked, reached for the car door, and fell down while his hand was still approximately two inches from the door. This Court concluded that plaintiff was not entering the vehicle but, instead, was "merely preparing to enter it." *Id*. at 651. Thus, the court drew a distinction between entering a vehicle and preparing to enter a vehicle. In *Teman v Transamerica Ins Co of Mich*, 123 Mich App 262, 265; 333 NW2d 244 (1983), this Court held that the plaintiff was entering into his vehicle when he alleged "that he had his foot on the back ledge of the truck and that he was attempting to open the door" because "opening the door is part of the process of 'entering into' the vehicle." In *McCaslin v Hartford Accident and Indemnity*, 182 Mich app 419, 420; 452 NW2d 834 (1990), the plaintiff exited a gas station after paying for his gasoline, and as he "returned to the truck, he walked between the rear of the truck and the front of a car which had pulled up behind the truck. The car lurched forward, pinning plaintiff between the bumpers and causing severe injury to his right knee." This Court conclude that the plaintiff was not entering into the truck because he "had not crossed the plane or threshold of the truck's door, nor had he even made physical contact with the truck's door when the accident occurred." *Id* at 422. In *Hunt v Citizens Ins Co*, 183 Mich App 660, 664; 455 NW2d 384 (1990), this Court concluded that a plaintiff who "had car keys in his hand and his left hand on the car door" was "entering into the vehicle." In *Shanafelt v Allstate Ins Co*, 217 Mich App 625, 628, 634; 552 NW2d 671 (1996), the plaintiff slipped on icy ground after "[s]he placed her hand on the vehicle door, opened the door, and took a small step toward the truck," and this Court concluded that she was "entering into" the truck. (Quotation marks omitted.) In *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 628, 636; 563 NW2d 683 (1997), the plaintiff was entering the vehicle when she opened the door, attempted to place her "foot on the driver's side floor board," lost her footing, and then fell down.[5]

The most recent and most specific case on this topic is *Graves v Collier*, 335 Mich App 14; 966 NW2d 229 (2020). This Court explained that "[e]ntry does not occur when a person is simply preparing to enter a vehicle. Rather, entry occurs when a person touches or opens their car door." *Id*. at 23 (citation omitted). Accordingly, this Court concluded that "[b]ecause plaintiff opened the door to her vehicle with the intention of entering the vehicle, plaintiff had entered her vehicle for purposes of MCL 500.3106(1)(c) at the time the accident occurred." *Id*. Thus, *Graves* explicitly reiterated the distinction between entering a vehicle and preparing to enter a vehicle that was established in *King*. Taken together, these cases establish that a person begins to enter a

---

[4] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

[5] In *Putkamer*, 454 Mich at 636, the parties agreed that the plaintiff was entering the vehicle.

vehicle when they touch the door with the intent to open it and get inside or when the person begins to cross the threshold of an already open door.

There is one anomalous case that we need to address. In *Ansara v State Farm Ins Co*, 207 Mich App 320, 321; 523 NW2d 899 (1994), the plaintiff

> had entered his car, started it, and switched on the air conditioner. He then got out of the vehicle, leaving the driver's side door open, and walked around the car to open the front passenger door and to assist his wife in securing their grandson in a child-restraint device. He also assisted his wife in entering the car and closing the passenger door. Plaintiff then walked around the rear of the car and, while approaching the driver's side door to again enter the vehicle, he stepped upon a stone or other debris, resulting in a fracture of his ankle. Plaintiff states that he was approximately one foot away from the driver's seat at the time of the injury, that he caught himself on the car and sat on the car seat after the injury

This Court deemed the facts as "between" those posed in *King* and *Hunt* then concluded, without further explanation, that the case was more similar to *Hunt* than *King*.

We conclude that, at this point, *Ansara* does not have applicability beyond the unique facts that it decided. This is consistent with how the issue has been approached in the numerous published opinion issues subsequent to *Ansara*. Indeed, this also seems consistent with the intent of the panel that decided *Ansara* as the Court did not make any pronouncements of ongoing rules of law; rather, the panel laid out the facts before, described two prior published opinions, and deemed the facts before it to be more similar to one of the prior opinions than the other. Regardless, *Ansara* is clearly distinguishable from the present case because the door was open, the car had been started, and the plaintiff was closer to the door.

It is clear that if the caselaw interpreting Section 3106(1)(c) is used to interpret this agreement then plaintiff was not getting in the truck at the time of the accident and, therefore, was not an occupant. However, the statute uses the term "entering into" whereas the contract uses the term "getting in." Thus, to determine whether to apply the above-described caselaw, we must determine whether "entering into" is synonymous with "getting in." At the outset, it is important to note that the above-described caselaw involves the interpretation of a statute while this case involves the interpretation of a contract. However, undefined terms in both statutes and contracts are interpreted consistent with their plain meanings. See *Stozicki v Allied Paper Co, Inc*, 464 Mich 257, 263; 627 NW2d 293 (2001) ("Statutes should be interpreted consistently with their plain and unambiguous meanings.") and *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007) ("This Court must examine the language of the contract and accord the words their ordinary and plain meanings, if such meanings are apparent."). Because the plain meaning of "entering into" is the same regardless of whether it is used in a statute or contract, it is appropriate for us to ascertain whether the plain meaning of the term used in Section 3106 is synonymous with the term used in this contract. There does not appear to be any caselaw that has examined this particular issue. Nevertheless, we can discern no basis upon which to conclude that the term "getting in" has a broader meaning than "entering into." Rather, it seems apparent that the terms are synonymous, with "getting in" being a quicker, less formal way to say it.

In conclusion, the term "getting in" from this contract is synonymous with the term "entering into" from Section 3106 of The Insurance Code. In accordance with the caselaw applying Section 3106, it is clear that plaintiff was not getting in the truck at the time of the accident. Rather, she was preparing to get in the truck. Therefore, the trial court erred by denying Fremont's motion for summary disposition.[6]

## IV. DOCKET NO. 363654—NILES

### A. MCR 2.116(C)(8)

Niles argues that he was entitled to summary disposition pursuant to MCR 2.116(C)(8) because plaintiff failed to bring any allegations against him in her complaint. We disagree.

"Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (quotation marks and citation omitted). "Michigan is a traditional notice-pleading jurisdiction with a relatively low bar for the sufficiency of initial allegations, particularly because parties generally will not yet have the benefit of discovery." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). "The primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley*, 287 Mich App at 305 (quotation marks, citation, and alteration omitted).

In her complaint, plaintiff alleged that Niles "failed to stop for the red light and crashed into Plaintiff's vehicle." Plaintiff alleged that she and Niles both got out to assess the damage, and after she "turned around to get back in the truck," Stone "failed to stop for the red light and struck Plaintiff pinning her between the two vehicles." Plaintiff then alleged that Niles and Stone both breached duties owed to her by driving carelessly, failing to stop for the red light, failing to observe the road in front of them, and failing to maintain control of their vehicles. While plaintiff did not mention her subsequent allegation that Niles parked too far from the curb, the complaint cleared the "low bar" of notice pleading by notifying Niles that plaintiff alleged that his negligence in connection with the two car accidents caused her injuries.

Therefore, the trial court properly denied the motion for summary disposition.

### B. MCR 2.116(C)(10)

Plaintiff has alleged a claim of negligence against Niles for his role in her injuries. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff

---

[6] Because this analysis resolves the issue, we decline to address Fremont's argument that plaintiff inappropriately used her deposition testimony to contradict the statements she made in her affidavit.

suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 508; 991 NW2d 230 (2022). " 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004) (citation omitted). Cause in fact means that "the injury could not have occurred without (or 'but for')" the defendant's conduct. *Id*. at 87. "On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id*. (quotation marks and citation omitted).

Niles disputes proximate causation. "In order for negligence to be the proximate cause of an injury, the injury must be the natural and probable consequence of a negligent act or omission, which under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as a result of his negligent act." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 393-394; 808 NW2d 240 (2010) (quotation marks and citation omitted). "An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable." *Black v Shafer*, 499 Mich 950, 951 (2016) (quotation marks and citation omitted). "[T]here can be more than one proximate cause contributing to an injury." *O'Neal v St. John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). "If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law." *Black*, 499 Mich at 951.

The most pertinent case on this topic is *Deaton v Baker*, 122 Mich App 252; 332 NW2d 457 (1982). In that case, the defendant was the driver of car A and the plaintiff was a passenger in car A. *Id*. at 254. While backing out of a private driveway, car A was struck by car B. *Id*. The plaintiff and the defendant, who were injured, exited car A to inspect the damage. *Id*. The defendant "left his car at least partially blocking the southbound lane, without any lights on, while he walked over to the [car B] to discuss the accident." *Id*. at 255. The plaintiff was then struck by car C and was pinned between cars A and C, causing serious injuries. *Id*. at 256. This Court concluded that summary disposition was inappropriate because "[w]hether defendant Baker was negligent in leaving his car blocking the highway after the accident with no lights on and, if negligent, whether the negligence was a proximate cause of plaintiff's injuries are questions of fact on which reasonable people could differ." *Id*. at 259. Published opinions issued before 1990, while not binding, remain precedential and "are thus afforded significantly more deference than would be given to unpublished cases." *Secura Ins Co v Stamp*, 341 Mich App 574, 581 n 5; 991 NW2d 244 (2022) (quotation marks and citation omitted).

Similar to *Deaton*, we conclude that there is a genuine issue of material fact regarding whether Niles parked his car in a manner that was reasonably safe. Clearly, it is foreseeable that additional cars would travel down the same road down which Niles and plaintiff were traveling. Niles hit plaintiff's truck because the snowy road conditions caused him to continue sliding forward instead of stopping at the red light, so it is thus apparent that Niles knew that this patch of road was particularly slick. Therefore, it was foreseeable that another vehicle might slide or otherwise lose control at that same location. Stone testified at his deposition that he lost control of his minivan and began to slide because he had to alter his course to safely pass Niles and plaintiff. While there is dispute and conflicting testimony regarding whether Stone needed to get so far over as to cross the center line, Stone testified unambiguously that he believed he needed to

move to the left to safely pass. Stone also testified that the vehicles could have been farther over, saying that "[t]hey weren't right on the curb." We also note that there is a question regarding whether Niles had his hazard lights activated. Niles could not remember if he turned them on, Stone did not recall seeing Niles's lights on, and the lights did not appear to be on in the photograph.

Niles argues that a photograph taken after the second accident establishes that he was actually parked closer to the curb than plaintiff; therefore, it was actually plaintiff that caused Stone to change course and lose control. We have examined the photograph closely, and it is not as clear as Niles suggests. The photograph was taken at such an angle that the positions of the vehicles relative to one another could easily be distorted. This is evidenced in part by the curb traversing the photograph at a sharp angle, and if the angle of curb is used as a reference point, one could reasonably conclude that the photograph depicts Niles's car as being farther from the curb than plaintiff's truck. It also appears from the photograph that Niles's car is not parallel to the curb, with the back of it sticking out farther than the front. In sum, the photograph creates more questions for a jury to answer.

In conclusion, a rational trier of fact could find that, given the circumstances, Niles parked unreasonably far from the curb and that Stone losing control of his vehicle was a foreseeable consequence of Niles's action. Therefore, the trial court properly denied the motion for summary disposition.

## V. CONCLUSION

In Docket No. 362922, we reverse the trial court's order denying Fremont's motion for summary disposition because plaintiff was not occupying the truck at the time of the accident. Therefore, pursuant to the terms of the insurance contract, she was not entitled to uninsured motorist coverage. Fremont, being the prevailing party, may tax costs. MCR 7.219(A). In Docket No. 363654, we affirm the trial court's order denying Niles's motion for summary disposition because the complaint apprised Niles of the nature of the claims against him and because a rational trier of fact could find that Niles failed to safely park his car. Plaintiff, being the prevailing party, may tax costs arising from the appeal against Niles. MCR 7.219(A). This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly
/s/ James Robert Redford